UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH J. DALTON, | No. 2:22-cv-00060 AC |
| Plaintiff, | |
| v. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for summary judgment will be DENIED.  The matter will be reversed and remanded to the Commissioner for further proceedings.

////

////

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on September 16, 2019. Administrative Record ("AR") 265-72.[2] The disability onset date was alleged to be August 1, 2019. AR 279. The application was disapproved initially and on reconsideration. AR 169-81. On April 6, 2021, ALJ Carol Eckersen presided over the hearing on plaintiff's challenge to the disapprovals. AR 34 – 67 (transcript). Plaintiff, who appeared with his counsel Elton Olson, was present at the hearing. AR 34. Lawrence Hughes, a Vocational Expert ("VE"), also testified at the hearing. Id.

On March 13, 2021, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 15-28 (decision), 20-32 (exhibit list). On November 8, 2021, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-5 (decision and additional exhibit list).

Plaintiff filed this action on January 7, 2022. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 18. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 12 (plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion), 21 (plaintiff's reply).

II. FACTUAL BACKGROUND

Plaintiff was born in 1978, and accordingly was, at age 40, a younger person under the regulations, at the disability onset date.[3] AR 27. Plaintiff has at least a high school education, and can communicate in English. AR 292. Plaintiff has prior work experience as a dental assistant. Id.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

---

[2] The AR is electronically filed at ECF No. 6 (AR 1 to AR 693).
[3] See 20 C.F.R. § 404.1563(c) ("younger person").

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

////

2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Step 2] The claimant has the following severe impairments: cervical degenerative disc disease with status-post anterior cervical discectomy and fusion at C4-C6, cervical headaches closed head injury, depressive disorder and a mild neurocognitive disorder (20 CFR 404.1520(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to cold temperatures, noise, vibration, heights and moving machinery. The claimant is capable of understanding, remembering and carrying out simple routine tasks and entry-level work.
>
> 6. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. [Step 5] The claimant was born [in 1978] and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> 8. [Step 5, continued] The claimant has at least a high school education (20 CFR 404.1564).

        9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

        10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are job that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

        11.  The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

AR 17-28.  As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act.  AR 28.

## VI.  ANALYSIS

Plaintiff argues that the ALJ erred in five ways: (1) omission of impairments at step two; (2) failure to equate an impairment to a Listing step three; (3) failure to properly credit the medical opinion of Dr. Andrew Burt; (4) failure to properly credit plaintiff's subjective testimony; and (5) failure to properly credit lay witness testimony.  ECF No. 21.

### A.  The ALJ Did Not Err at Step Two

Plaintiff argues that various impairments, including his range of motion limitations, hand/arm limitations, and vision problems, were not identified as severe at step two.  "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were considered.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987).  At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)).  The step two severity determination is "merely a threshold determination of whether the claimant is able to

perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

Here, the ALJ did not dispose of plaintiff's disability claim as groundless at step two. AR 17-18). Indeed, the ALJ found that plaintiff satisfied the severity requirement, and went on to conduct the disability analysis  In doing so she considered all functional limitations established by the reliable evidence, not just the ones identified as severe. See 20 C.F.R. § 404.1545(a)(2). Plaintiff's assertion that certain other impairments were also "severe" does not provide grounds for reversal. Once the ALJ determined the existence of a severe impairment or combination of impairments, the ALJ then considered all the functional limitations established by the reliable medical evidence, regardless of severity. Accordingly, any error at step two not have affected the ultimately disability determination, and therefore would have been harmless as a matter of law.

### B. The ALJ Did Not Err at Step Three

Plaintiff argues the ALJ erred at step three by failing to consider all relevant evidence in determining whether plaintiff met the listing of musculoskeletal disorder section 1.15. At step three of the sequential evaluation process, the ALJ must consider whether one or more of a claimant's alleged impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). The Listings set forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. See 20 C.F.R. § 416.920(d).

The burden of proof is on the claimant to establish that he meets or equals any of the impairments in the Listings. See Tackett, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526). A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508 (effective through March 26, 2017). "An ALJ must evaluate the relevant evidence before concluding that a claimant's

7

impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

Here, plaintiff argues the ALJ did not consider all the evidence in reaching a conclusion at step three, and that instead she "dispensed only boilerplate, denying without reason or explanation that listing 1.15 was satisfied." ECF No. 12 at 11, citing AR 18. The ALJ's opinion on this point reads as follows:

> According to the musculoskeletal disorder section 1.15, the record did not show disorder of the skeletal spine resulting in compromise of a nerve root(s) (see 1.00F), documented by neuroanatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s) of pain, paresthesia, and muscle fatigue. The record did not show radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

AR 18.

Plaintiff argues the ALJ failed to "grasp the timeline from cervical symptoms through fusion surgery to multiple imaging and electrodiagnostic reasons supporting Dr. Andrew Burt's post-laminectomy syndrome/failed surgery diagnosis and specific opinion the relevant listing was met, albeit Dr. Burt addressed the earlier version of the listing." ECF No. 21 at 6. However, though the ALJ did not specifically acknowledge the opinion of Dr. Burt within the step three analysis, she did expressly address it later, making clear that this portion of the medical record was in fact considered. AR 22-23. Thus there was no error, or any error is harmless.

C. <u>The ALJ Failed to Properly Address the Medical Opinion of Dr. Burt</u>

Plaintiff asserts that the ALJ improperly addressed the medical opinion of orthopedic examiner Dr. Andrew Burt. ECF Nos. 12 at 12; 21 at 8. New regulations apply to claims filed on or after March 27, 2017, which change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical

opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are defined in the regulations as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining

doctor's opinion. Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022). Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. Id. In sum, the ALJ "must 'articulate . . . how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." Id. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ erred because the decision related to Dr. Burt speaks only of "consistency with the treatment notes," not of supportability. ECF No. 12 at 12, AR 26. The ALJ's opinion reads, in relevant part, as follows:

> I find the medical opinions from Dr. Helman and Dr. Burt were not persuasive and consistent with the discussed treatment notes. . . . Dr. Burt indicated in March 2021 that the claimant could no longer return to the workforce and a dental assistant. The claimant is unable to work an eight-hour workday, five days a week on a continuous basis and his disabilities restrict him to less than the full range of sedentary work. The claimant has to lie down or recline to take the weight off his cervical spine (Exhibit B15F). However, there are no new medical evidence in the record from August 2020 through February 2021 showing that the claimant's condition worsened. Dr. Burt's one time opinion were too excessive. Therefore, the objective findings and the medical opinions from Dr. Trias and Dr. Lee does not support Dr. Burt's opinions of less than a full range of sedentary work (Exhibit B15F).

AR 26.

The court agrees with plaintiff that the ALJ did not properly address supportability in full consideration of the record, as she was required to do. Dr. Burt conducted his own examination and generated his own medical findings, but the ALJ relies only on her comparison of Dr. Burt's opinion with prior medical evidence; the ALJ fails to discuss the supportability of Dr. Burt's opinion based on his *own* findings. AR 691-93. The ALJ thus did not adequately explain the supportability of Dr. Burt's opinion considering the record as a whole, and the assessment is not supported by substantial evidence. 20 C.F.R. § 404.1520c(b)(2).

### D. The ALJ Improperly Rejected Plaintiff's Subjective Testimony

The ALJ improperly rejected plaintiff's subjective testimony regarding his pain and impairments. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process.

1  First, the ALJ must "determine whether the claimant has presented objective medical evidence of
2  an underlying impairment which could reasonably be expected to produce the pain or other
3  symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment
4  could reasonably be expected to cause the severity of the symptom she has alleged; she need only
5  show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759
6  F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the
7  pain or fatigue itself is not required. Id. (internal citations omitted). Second, if the ALJ does not
8  find evidence of malingering, the ALJ may only reject the claimant's testimony by offering
9  "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). The Ninth
10 Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily
11 activities are inconsistent with testimony about pain, because impairments that would
12 unquestionably preclude work and all the pressures of a workplace environment will often be
13 consistent with doing more than merely resting in bed all day." Id. at 1016.
14         On his Adult Function Report, plaintiff endorsed neck pain and limited range of motion
15 post-cervical surgery, bilateral pain and numbness in arms and hands, weak grip/dropping things,
16 depression, anxiety and panic attacks, and post-traumatic stress disorder due to traumatic brain
17 injury. AR 309. Plaintiff wrote that his wife cares for their children and makes all meals, goes
18 shopping, and does all household work. Id. Plaintiff indicated he does not drive but can walk
19 "just outside house" about 3-4 times per week using walking sticks and assistance from his wife.
20 AR 312. At the disability hearing, plaintiff indicated had a bad accident three years ago and now
21 struggles with cervical degenerative disc disease, closed head injury, headaches, depression, and
22 mild cognitive disorder. AR 51-52. Plaintiff further testified that he has problems with his hands
23 and drops things, problems walking due to balance (he uses trekking poles for support), and
24 difficulty sitting upright and sleeping due to back pain. AR 58-60. Plaintiff indicated he has
25 significant trouble with falls. AR 61.
26         The ALJ found plaintiff's "medically determinable impairments could reasonably be
27 expected to cause the alleged symptoms; however, the claimant's statements concerning the
28 intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record for the reasons explained in this decision." AR 21. As an initial reason for discounting plaintiff, the ALJ states that plaintiff's testimony is inconsistent with treatment notes showing his condition is well controlled. Id. The ALJ then moved directly into a chronological review of the treatment notes, which ends with the ALJ noting:

> In July 2020, a cervical MRI showed postsurgical changes at C5-6 with no spinal canal narrowing, right-sided moderate to severe foramina narrowing secondary to osteophyte formation, degenerative changes, and right hemicord myelomalacia at C3-4 (Exhibit B12F/2).
>
> In March 2021, the claimant's chief complaints were headaches and neck pain. Orthopedic examiner Dr. Andrew Burt observed and noted that the claimant used a walking stick for support but his gait was relatively normal. The claimant indicated that his leg gives way and he always carries a stick for balancing. His examination revealed limited cervical range of motion with some spasms, some numbness to sharp stimulation in the C6 dermatome distribution to the right, and some numbness located over the radial left side but did not extend up into the forearm claimant had good gripping strength and when he turned his head to the opposite side, the radial pulses were stable bilaterally. Diagnoses were cervical headaches, post–concussion syndrome, chronic neck pain with bilateral radiculopathy, and post-operative cervical decompression and fusion with retained hardware.
>
> Dr. Burt noted that the claimant could no longer return to the workforce and a dental assistant. The claimant is unable to work an eight-hour workday, five days a week on a continuous basis and his disabilities restrict him to less than the full range of sedentary work. The claimant has to lie down or recline to take the weight off his cervical spine (Exhibit B15F).

AR 22.

It is not readily apparent how these medical findings, as interpreted by the ALJ, are inconsistent with plaintiff's subjective testimony and the ALJ does nothing to draw connections that discredit plaintiff. Further, the ALJ concludes that "there are no medical evidence in the record from August 2020 through February 2021 regarding cervical problems or headaches," a timeframe which notably stops just short of Dr. Burt's March 2021 examination. AR 25. "An ALJ must identify the specific testimony that lacks credibility, provide clear and convincing reasons why the testimony is not credible, and identify the specific evidence in the record which supports the ALJ's determination." Talbot v. Colvin, No. SACV 14-1935 JC, 2015 WL 5826808,

at *4 (C.D. Cal. Sept. 30, 2015).  The ALJ's analysis does not make the requisite connections.

### E. The ALJ Improperly Rejected Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected his wife's lay witness testimony by summarily rejecting it as part of the rejection of plaintiff's own subjective testimony.  ECF No. 12 at 17.  ALJ need only give germane reasons for discrediting the testimony of lay witnesses, and inconsistency with the medical evidence is one such reason.  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  In Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009), the Ninth Circuit held that where an ALJ gave valid reasons for rejecting claimant's complaints, "because the wife's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."  See also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) ("We have not, however, required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness").

Here, the testimony of Jessie Dalton, plaintiff's wife, is provided in a narrative written form rather than on a third-party adult function report.  AR 358.  The statement does not exactly mirror plaintiff's subjective testimony, but instead adds new information, including the assertion that plaintiff cannot benefit from pain management option because of a genetic condition.  Id.  Ms. Dalton states that plaintiff "seems to injure himself unknowingly weekly where he suffers from numbness and loss of function."  Id.  The ALJ's general rejection of Ms. Dalton's statement as part and parcel of rejecting plaintiff's subjective testimony was insufficient because the two statements contain substantive differences.  The ALJ did not provide germane reasons for rejecting Ms. Dalton's testimony.

### F. Remand

The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for further proceedings by the Commissioner is necessary.  An error is harmful when it has some consequence on the ultimate non-disability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  The ALJ's error in this matter was harmful: the medical

opinion of Dr. Burt, the subjective lay witness testimony, and plaintiff's subjective testimony, properly considered, may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Here, the ALJ failed to properly consider plaintiff's testimony, the medical opinion of Dr. Burt, and the lay witness testimony of Jessie Dalton.  Further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 15), is DENIED;

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 13, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE